# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | CR418-256 |
| | ) | CR419-193 |
| PAUL FRANCIS DUNN, III, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Paul Francis Dunn, III is charged in two separate criminal cases. He is indicted on one count of aggravated sexual abuse of a child committed by a person employed by the Armed Forces outside the United States, in violation of 18 U.S.C. §§ 3261, 2241(c), one count of sexual abuse of a minor committed by a person employed by the Armed Forces outside of the United States, in violation of 18 U.S.C. §§ 3261, 2243(a), and one count of abusive sexual contact committed by a person employed by the Armed Forces outside of the United States, in violation of 18 U.S.C. §§ 3261, 2244(a)(3). CR418-256, doc. 3. He is also charged, by criminal information, with one count of abusive sexual contact committed by a person employed by the Armed Forces outside the United states, in violation of 18 U.S.C. §§ 2244(a)(5), 3261, and one count of abuse

of a minor committed by a person employed by the Armed Forces outside the United States, in violation of 18 U.S.C. §§ 2243(a), 3261. CR419-193, doc. 1 (Information). The factual allegations in the two charging instruments overlap and the Government has informed the Court that it is evaluating which instrument to proceed under. Defendant's suppression motion has been docketed in both cases. *See* CR418-256, doc. 86; CR419-193, doc. 31. For simplicity, and because the substance of the motions is identical, the Court cites only to the docket in CR418-256. The Clerk is, however, **DIRECTED** to docket this Report and Recommendation and any objections filed in both cases.

Dunn moves to suppress evidence collected from his home in Savannah, Georgia pursuant to a warrant issued by this Court. *See generally* doc. 86. Specifically, he contends that the warrant application's reliance on testimony from the alleged victim, identified only as "Victim 1," failed to support probable cause as the information provided was stale. As recited in the application, Victim 1 informed law enforcement that defendant had taken nude photographs of her "6 or 7 years ago," when she was 15. *See id.* at 3; *see also* 86-1 at 26 (affidavit submitted in support of warrant application). The age of that information, defendant contends,

undermines the probable cause basis for the search. *See* doc. 86 at 3. The Government responds that, despite its age, the information is not stale, given the particular and well-established nature of child pornography. *See* doc. 88 at 5-7. Alternatively, the Government contends that the good-faith exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984), applies. *Id.* at 8-10. On May 12, 2020, the Court held a hearing on defendant's motion. *See* doc. 99 (Minute Entry). No witnesses testified, but the parties presented argument. *Id.*

The Supreme Court has established that, in evaluating the sufficiency of an issuing magistrate's determination of probable cause, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). In considering whether the affiant's assertion and issuing judge's acceptance of the existence of probable cause are adequate, it is important to remember that the standard for review is "exceedingly deferential." *See United States v. Rangel*, 2018 WL 817845, at * 6 (S.D. Ga. Jan. 18, 2018). "A reviewing court's task is not to make a *de novo* finding of probable cause but rather to decide whether the issuing magistrate—whose assessment of the

affidavit's factual presentation is entitled to 'great deference'—had a 'substantial basis' for finding probable cause." *Id.* (quoting *Gates*, 462 U.S. at 236, 238–39); *see also United States v. Leon*, 468 U.S. 897, 914 (1984) ("Reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." (citations omitted)).  In even "'doubtful or marginal cases,'" the probable cause determination should be upheld. *Rangel*, 2018 WL 817845, at * 6 (quoting *United States v. Scott*, 555 F.2d 522, 527 (5th Cir. 1977)). Probable cause, itself, requires neither convincing proof nor *prima facie* showing of criminality; only a "substantial chance" of such activity is required. *See Gates*, 462 U.S. at 235.

Dunn alleges that the information supplied in the warrant application's affidavit was "stale." *See* doc. 86 at 3. The Eleventh Circuit has explained that its "staleness doctrine in the context of probable cause . . . requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues." *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000);

4

*see also United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994) (citing *United States v. Bascaro*, 742 F.2d 1335, 1345 (11th Cir. 1984), abrogated on other grounds by *United States v. Lewis*, 492 F.3d 1219 (11th Cir. 2007)) ("Warrant applications based upon stale information fail to create a probable cause that similar or other improper conduct is continuing."). Staleness analysis, however, is not governed by "some talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate," rather it involves consideration of the "unique facts presented" by each case. *Harris*, 20 F.3d at 450.

In order to evaluate the fact-specific sufficiency of the affidavit's allegations, it is necessary to consider the potential crimes at issue. The affidavit supporting the warrant application asserted probable cause existed "to believe that evidence of criminal offenses, namely, violations of 18 U.S.C. Sections §§ [sic] 2251, 2252A(a)(2), and 2252A(a)(5)(B), 3261, involving the following underlying offenses: 18 U.S.C. § 2241(c), 18 U.S.C. § 2243(a), and 18 U.S.C. § 2244(a)(3)," was located at the residence. *See* doc. 86-1 at 27–28. Section 2251 prohibits, in various circumstances, "producing any visual depiction" of a minor engaging in sexually explicit conduct. *See id*. Section 2252A(a)(2) similarly prohibits receipt or

5

distribution of any material constituting "child pornography," and § 2252A(a)(5)(B) prohibits the knowing possession of or access to "material that contains an image of child pornography." *Id.* "Child pornography" is defined in a separate section as "any visual depiction, including [*inter alia*] . . . video, . . . where—the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct . . . ." 18 U.S.C. § 2256(8).   The remaining statutory sections cited are the sexual abuse crimes, enumerated above, upon which Dunn is indicted in CR418-256. The warrant application itself is even more explicit in its focus on the child pornography crimes, omitting any reference to the abuse crimes. *See* doc. 86-1 at 4.

At the hearing, defendant argued that the probable cause basis for the warrant was undermined because the affidavit was not typical of warrants related to abuse charges, but was more consistent with warrants related to child pornography.  As the Government pointed out in rebuttal, the affidavit does not rigorously distinguish between the physical abuse allegations and the child pornography allegations; the facts underlying those allegations are inextricably linked.   The fact that evidence supporting child pornography charges was not found, or, if it was, the

6

Government has chosen not to prosecute Dunn for those crimes at this time, is irrelevant to whether the affidavit established probable cause to believe evidence of those crimes would be found at the residence.

Since the affidavit, warrant application, and the warrant issued make clear that the probable cause determination was based, at least in part, on the likelihood of evidence of child pornography crimes, it is simply irrelevant that the affidavit also asserted probable cause based on the abuse crimes.[1] There is simply no basis in either the Fourth Amendment or Federal Rule of Criminal Procedure 41 to require a warrant application or warrant to specify, by citing a statutory section, the crimes implicated. *See United States v. Koyomejian*, 970 F.2d 536, 548 (9th Cir. 1992) (Kosinsky, J. concurring) ("There is no requirement that the warrant itself contain a description of the crime; the warrant must only 'particularly describe the place to be searched, and the persons or things to be seized.'" (quoting U.S. Const. amend IV)); *see also* Fed. R. Crim. P. 41(e)(2) (among other procedural and logistical requirements, the warrant

---

[1] Although neither party has attached the warrant itself as an exhibit, and that document remains under seal, the Court notes that it's probable-cause finding is based exclusively on the child pornography allegations. *See* MJ418-066, doc. 10 at 1 (S.D. Ga. Nov. 8, 2018).

7

"must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned."). As a former judge of the United States Court of Appeals for the Ninth Circuit explained in concurrence, there is "no constitutional requirement that an applicant for a warrant specify, and the judge determine, the precise statute violated." *Koyomejian*, 970 F.2d at 548. Defendant has pointed to no authority that would suggest a warrant, even if issued on probable cause for several related crimes, is invalid if law enforcement subsequently declines to prosecute some of those crimes. Since the Court finds, as explained below, that the issuing magistrate had a substantial basis to find probable cause that child pornography would be found, there is no need to consider whether a similar substantial basis existed for other crimes implicated in the affidavit, including the crimes currently charged.

The affidavit's invocation of the child pornography crimes is important because of well-established case law that staleness analysis, in the context of child pornography allegations, is distinct from staleness analysis in other contexts. *See, e.g., United States v. Henry*, 2013 WL 3064178, at * 2 (N.D. Ga. June 18, 2013) ("Courts have recognized . . . that

the question of 'staleness' is unique in the child pornography context," and collecting cases). The Eleventh Circuit has noted that "[o]ur sister circuits have repeatedly rejected staleness challenges in appeals involving child pornography. *They have observed that 'pedophiles rarely, if ever, dispose of child pornography*." *United States v. Touset*, 890 F.3d 1227, 1238 (11th Cir. 2018) (emphasis added) (quoting *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002)). The Court further explained "probable cause of involvement in *electronic* child pornography remains even longer because deleted files can remain on electronic devices." *Id.* (emphasis in original). The affidavit in this case clearly alleges the presence of child pornography stored on electronic devices at the residence in question. *See, e.g.*, doc. 86-1 at 27 (concluding, from information previously alleged, "that one or more electronic devices at the SUBJECT PREMISES contain child pornography . . ."). Thus, the assertion of staleness must be considered in that "unique" context.

Despite the unique staleness analysis applicable to electronically-stored child pornography, the Government has cited no case involving information as old as Victim 1's allegations here. As discussed above, the affidavit reports that Victim 1 observed the nude photographs on Dunn's

computer some "6-7 years" before the October 2018 interview. Doc. 86-1 at 26. The Government cites to an opinion from the United States Court of Appeals for the Tenth Circuit holding that five-year-old information related child pornography was not stale. *See* doc. 88 at 7 (citing *United States v. Riccardi*, 405 F.3d 852, 860–61 (10th Cir. 2005)). The United States Court of Appeals for the Third Circuit has found that three-year-old information concerning child pornography was not stale. *See United States v. Prawdzik*, 484 F. App'x 717, 723 (3d Cir. 2012) (finding allegations of abuse ending "at least three years prior to the search warrant application," were not stale "[g]iven the long period of repeated sexual abuse and the fact that [the defendant] transferred the videotapes of the assaults to his computer . . ."). Finally, the Fourth Circuit has held that six-year-old information was not so stale that it could not be considered in a warrant application. *United States v. Ramsburg*, 114 F. App'x 78, 82 (4th Cir. 2004) (rejecting argument that allegation of transmission of child pornography in 1995 could not support probable cause in 2001). However, one court has held that seven-year-old allegations of possession of child pornography were stale. *See United States v. Westerlund*, 2009 WL 3711555, at * 3–4 (report that defendant

had possessed possible child pornography in 2002 was too stale to support probable cause to search defendant's residence for child pornography in 2009). All of these cases suggest that the information at issue here is, even if not stale, approaching the limits of staleness.

To be sure, the age of the information about the photographs on Dunn's laptop provided by Victim 1 skirts the boundaries imposed by the staleness doctrine.[2] However, it is not so stale that it vitiates the issuing

---

[2] The Government confusingly asserts that "courts in other circuits have routinely upheld warrants where there is a significantly longer passage of time between the criminal activity and the execution of a search warrant than is present in the instant case." Doc. 88 at 7. However, none of the cases the Government cites involve delays longer than the delay here, depending on what the Government means by "criminal activity." It cites cases involving eighteen-month old evidence, three-year old evidence, and five-year old evidence, but none even equal to—to say nothing of "significantly longer" than—the six to seven years between the witnessed possession of the child pornography and application for the warrant.

Assuming the "criminal activity" is the alleged abuse, it is not clear that it extended very long, if at all, beyond the date when Victim 1 allegedly observed the photographs on Dunn's computer. Based on the date of her interview, Victim 1 seems to date the observation sometime in 2011 or 2012. *See* doc. 86-1 at 26 (stating that she saw the photographs "6–7 years ago" in 2018). Earlier allegations in the affidavit date the commencement of the abuse to 2005 and give Victim 1's age at that time as approximately eight-years old. *See id.* at 24 (alleging Victim 1 was "6–7 years old" in 2004, and that the abuse commenced in 2005). The affidavit does not explicitly date Victim 1's confrontation of Dunn with her allegations, his alleged admission, and Victim 1's mother's expulsion of Dunn from the home. *See id.* at 25. It does, however, allege that the confrontation occurred when Victim 1 was fifteen years old. *Id.* The implication, therefore, is that the confrontation occurred sometime in 2012 or 2013, *i.e.*, if Victim 1 was seven or eight years old in 2005, when the abuse allegedly commenced, it ended seven or eight years later when she confronted Dunn and he was expelled from the home. At most, then, the criminal conduct continued for a year after Victim 1 observed the photographs, and none of the alleged abuse occurred less than

11

magistrate's probable cause determination, given the deferential standard applied. The factual allegations in the affidavit, considered as a whole, establish a substantial basis for the issuing magistrate's determination. First, the affidavit includes allegations that the sexual abuse, of which the production of the child pornography was an integral part, occurred

---

approximately five years before the warrant was sought.

There is some suggestion in the Government's brief that Dunn's alleged admission of the abuse through a Facebook message was the proximate activity. *See* doc. 88 at 4-5. Certainly, the alleged 2017 Facebook admission occurred more recently than any of the allegations of abuse or child pornography crimes. It is not clear, however, that the admission supported probable cause for the presence of child pornography, which formed the basis for the application and issued warrant. The allegations about the message in the affidavit are limited to the witness's accusation that Dunn raped the victim. Dunn, allegedly, admitted that he "touched" the victim, but denied raping her. *See* doc. 86-1 at 26. Since it is not clear that the affidavit's allegation factored in the probable cause for the warrant, which as discussed above was expressly related to child pornography, it is not entirely clear how it could factor into the staleness analysis. One possible, though not explicitly asserted connection, is that the alleged abuse is probative of Dunn's fitting what other courts have called the "collector profile" which functions in the uniqueness of the staleness analysis in the child pornography context. *See, e.g., United States v. Raymonda*, 780 F.3d 105, 114–15 (2d Cir. 2015) (noting that the inference that "collectors" of child pornography are likely to retain it for considerable periods of time is based, among other factors, on "a suspect's admission or other evidence identifying him as a 'pedophile.'").

Alas, none of that chronology or analysis is laid out in the Government's response. Given the significance of the durations to the question of staleness, the Court might have expected a more explicit presentation. Regardless, the Government's characterization of the case law appears overstated. Even the most generous construction for the Government makes the duration between the alleged criminality and the warrant application the longest sanctioned by any case it cites. As discussed below, the Court's research did not disclose *any* case sanctioning a "*substantially* longer" period. The Court will, however, attribute the apparent overstatement to zealous advocacy.

repeatedly over approximately seven years. *See* doc. 86-1 at 24–25 (alleging that sexual abuse commenced when the victim was approximately eight years old and continued until she was fifteen); *see also United States v. McBurnette*, 382 F. App'x 813, 815 (11th Cir. 2010) ("[T]he affidavit indicated that the sexual abuse occurred multiple times and was not an isolated event, so the time between the cessation of the conduct and obtaining the warrant was of less significance." (quotes and cite omitted)). Second, the affidavit includes allegations that Dunn transferred the photographs from a cellular telephone to a computer. Doc. 86-1 at 26. Similar facts were recited by the Third Circuit, in *Prawdzik*, to conclude that victim testimony about the defendant's past conduct was not stale. *See Prawdzik*, 484 F. App'x at 723 ("Given the long period of repeated sexual abuse and the fact that [the defendant] transferred the videotapes of the assaults to his computer, we conclude that there was a 'substantial basis' for the magistrate judge to conclude that the affidavit established probable cause."). Those allegations provide a sufficiently substantial basis for the issuing magistrate's probable cause determination.

Even if the Court were to find that the child pornography allegations did not provide a substantial basis for the issuing magistrate's probable cause determination, the good-faith exception to the exclusionary rule would preclude suppression. The Supreme Court, in *United States v. Leon*, held that officers' objectively reasonable reliance on a warrant, even one which was subsequently determined to lack probable cause, removed any practical justification for applying the exclusionary rule. *See* 468 U.S. 897, 921 (1984) (excluding evidence because the executing officer reasonably relied on the issuing magistrate's probable cause determination, "cannot logically contribute to the deterrence of Fourth Amendment violations."). Given that exception, "searches conducted pursuant to warrants will rarely require suppression." *United States v. Taxacher*, 902 F.2d 867, 871 (11th Cir. 1990).

Despite the rarity of suppression of evidence collected pursuant to a warrant, the exclusionary rule continues to apply where the executing officer has "no reasonable grounds for believing that the warrant was properly issued." *Leon*, at 922–23. *Leon* identified four situations where suppression would remain appropriate: (1) where the officer misled the issuing magistrate by intentionally or recklessly including false

14

information in the affidavit, (2) "where the issuing magistrate wholly abandoned his judicial role" by failing to act neutrally, (3) where the "affidavit so lack[s] . . . indicia of probable cause as to render official belief in its existence entirely unreasonable," and (4) where the warrant issued is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* at 923.

At the hearing, defense counsel argued that the lack of any authority finding probable cause based on information as old as Victim 1's information about the photos made the officers' reliance on the probable-cause finding unreasonable. There was no suggestion that any of the other circumstances identified in *Leon* precluding exclusion applied here. The Court, therefore, will limit its *Leon* analysis to the question of whether the affidavit was so lacking in the indicia of probable cause that the officers' belief in it was entirely unreasonable.

*Leon* itself refutes the idea that the officers' belief in the probable-cause basis of the warrant was entirely unreasonable. *Leon* explained "*[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause* and, if so, to issue a warrant . . . . *In the ordinary case, an officer cannot be expected to question the*

15

*magistrate's probable cause determination . . . ." Leon*, 468 U.S. at 921 (emphasis added). A technically legal question, like the staleness of information included in the warrant affidavit, is precisely the magistrate's purview. Law enforcement applicants are simply not required to understand and apply the law to the facts they offer in support of probable cause. Further, as discussed above, the authority on the staleness question is not as clear cut as either side would have it. Refusing to apply the good-faith exception here would be tantamount to insisting, not only that law enforcement know the law, but that they know it in all its subtlety. Any such insistence would be flatly inconsistent with *Leon*. *See, e.g.,* 1 Wayne R. LaFave § 1.3(f) (5th ed 2019) ("[I]t is rather easy to read *Leon* as supporting the proposition that the police, having turned the probable cause decision over to another person (the neutral and detached magistrate who by longstanding Fourth Amendment doctrine is viewed as the preferred decisionmaker on the probable cause issue), are generally entitled to presume that the magistrate knows what he is doing."). Indeed, LaFave notes that some courts regard "the degree of police deference to the magistrate that is perceived by courts as reasonable under *Leon* exceeds significantly the

'great deference' owed the magistrate by reviewing courts under *Gates*." *Id.* In similar circumstances, courts have applied the good-faith exception in the face of evidence that an officer knew of a case suggesting the staleness of evidence contained in the affidavit. *See Raymonda*, 780 F.3d at 118–19 (concluding "[w]here a relevant legal deficiency was not previously established in precedent, the agent's failure to recognize that deficiency cannot vitiate good faith" (internal quotations and cite omitted)). *But see United States v. Zimmerman*, 277 F.3d 426, 437 (3d Cir. 2002) (officer's reliance on stale information was "entirely unreasonable," precluding application of *Leon*).

Defendant argued at the hearing that, in the absence of authority sanctioning similarly aged information, an officer could not rely on it in good faith. That seems to get the good-faith analysis precisely backwards. As the Second Circuit pointed out, the relevant question is whether there is precedential authority precluding reliance on the information. *See Raymonda*, 780 F.3d at 118–19. Even assuming, then, that Victim 1's information about the photographs was stale, and therefore insufficient to support probable cause, law enforcement was entitled to rely on the issuing magistrate's determination in the absence

of clear precluding precedent. As discussed above, the age of the information skirts the limit of staleness, but does not cross it. In close or novel circumstances, officers are entitled to rely on the neutral magistrate's determination of probable cause. Thus, even if Victim 1's information about the photographs was stale, the evidence should not be suppressed under *Leon*.

In summary, the Court finds that the issuing magistrate had a substantial basis for his probable cause finding in this case. Even if he did not, however, the officers relied on his determination in good faith. Accordingly, Dunn's motion to suppress the evidence collected pursuant to the warrant should be **DENIED**. Doc. 86.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 26th day of June, 2020.

*/s/ Christopher L. Ray*
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA